THE MOLINE PLOW COMPANY v. M. W. WITHAM, *as Sheriff of Thomas County, et al.*

1. WRITTEN CONTRACT—*Conditional Sale.* A written contract, whereby a vendor of articles of personal property, like wagons, cultivators, plows, harrows, and drills, agrees to deliver a lot of such articles to a retail dealer for sale, containing the provision, "that the ownership of the personal property, shipped under the contract, is to remain in the vendor until they are fully paid for in cash," is an instrument in writing evidencing the conditional sale of personal property.

2. INSTRUMENT IN WRITING—*Reasonable Time to Record.* Chapter 255, Laws of 1889, regulating the recording of "title notes or evidences of conditional sales," applies to all instruments in writing or promissory notes therein referred to, whether in existence at the time that act went into force, or thereafter executed, with the limitation, however, that there must be a reasonable time after the statute went into force for the holders of such notes or instruments then in existence to comply with its provisions; and *held,* that two or three days after the law went into force would not be a reasonable time for the holder of such an instrument, living in Kansas City, Mo., to deposit the same with the register of deeds of Thomas county, in this state, where the property was kept.

*Error from Thomas District Court.*

ACTION by the *Moline Plow Company* against *M. W. Witham,* sheriff, and Ramsey & Ramsey, for the possession of goods

sold by plaintiff to Ramsey & Ramsey under an agreement that the ownership should remain in the seller until paid for, and levied on by Witham at the instance of attaching creditors of Ramsey & Ramsey. At the March term, 1890, there was judgment for defendants, and plaintiff brings error.

*J. E. Campbell*, and *Joseph A. Gill*, for plaintiff in error:

Plaintiff in error contends that its conditional contract, made with the Ramseys on December 8, 1888, concerning the goods and chattels so replevied by plaintiff in error, was a valid and enforceable contract. See *Sumner v. McFarlan*, 15 Kas. 600; *Branson v. Heckler*, 22 id. 610; *Hallowell v. Milne*, 16 id. 65; *Owens v. Hastings*, 18 id. 446.

The conditional contract between plaintiff in error and the Ramseys expressly reserves title and ownership of the goods and chattels replevied by plaintiff in error from defendants in error in plaintiff in error until such time as said goods and chattels shall be fully paid for in cash.

The Ramseys had no attachable interest in said goods and chattels, and plaintiff in error should recover against defendants in error. See cases *supra*. See, also, 5 Field, Briefs, § 265, and cases therein cited; 2 Kent, Com., 10th ed., p. 694, note 2, and p. 695, notes 1, 2, 3, 4; Abbott, Tr. Ev., p. 317, cl. 3; Drake, Att., § 246.

Chapter 255, Laws of 1889, is objectionable and obscure, inasmuch as it fixes no certain time, nor does it give reasonable notice, for the recording of contracts then in existence, and makes no distinction in its provisions as to contracts then in existence and thereafter to be made. All the essential incidents of a contract which render it valuable, and enable its owner to enforce it, are secured from attack by the constitution from subsequent legislative enactment. *Phinney v. Phinney*, 81 Me. 450; *Van Hoffman v. Quincy*, 4 Wall. 550; *Edwards v. Kearsey*, 96 U. S. 600.

Chapter 255, Laws of 1889, virtually places the title of the property of plaintiff in error in the Ramseys, against the express terms of said conditional contract, and thus de-

prives the plaintiff of its said property without due or any process of law except the publication of the act in the statute book. Whereas, until 12 o'clock of the night of May 24, 1889, plaintiff in error had such title to said goods and chattels that, under the law as it then existed, no one could attach the same as the property of the Ramseys. One minute later, on May 25, 1889, the Ramseys were, by the terms of such statute, invested with the title to said goods and chattels, so that other creditors of the Ramseys could have the same attached. Const. U. S., Amend., art. 5; Desty, Fed. Const. 261. "The legislature has no power to enact a law which takes property from one individual and gives it to another." *Turner v. Althans*, 6 Neb. 54. If this statute vested the title of said property in the Ramseys, it is clearly unconstitutional and void.

*G. W. Goodsoe*, for defendants in error Sherman S. Jewett & Co.:

The whole transaction between the Moline Plow Co. and Ramsey & Ramsey constitutes an absolute sale; and the law in relation to conditional sales is inapplicable, and does not control such sales in a controversy like this. *Blanchard v. Fitzpatrick*, 146 Mass. 24; *Chickering v. Bastrees*, 130 Ill. 206; *Wagon Works v. Carmen*, 109 Ind. 31; *McCombs v. Guild*, 9 Lea, 81; *Poorman v. Witman*, 49 Kas. 697.

It being an absolute and unconditional sale, judgment was rightly rendered for defendants.

This was in no sense a conditional sale, but was the giving of the property as security back for the payment of the debt, and was the essence of a mortgage, which, not being recorded, was void (Comp. Laws of 1885, ¶ 3499; Gen. Stat. of 1889, ¶ 3903); and also fraudulent, because the Ramseys were allowed and authorized to retain possession and carry on their business by selling the goods at retail in the regular course of business, disposing of the proceeds as they chose. *Heryford v. Davis*, 102 U, S. 235; *Gardner v. McEwen*, 19 N. Y. 123; *Potts v. Hart*, 99 id. 643; *Hangen v. Hachemeister*, 114 id.

566; *Huschle v. Morris*, 131 Ill. 587; *Rogers 'v. Whitehouse*, 71 Me. 222; *Leser v. Glaser*, 32 Kas. 546; *Implement Co. v. Schultz*, 45 id. 52; *Rathbun v. Berry*, 49 id. 735; *Devlin v. O'Neil*, 6 Daly, 305.

If it were a conditional sale, then it is void as to defendants in error for want of recording. Laws of 1889, ch. 255; *Manufacturing Co. v. Richards*, 69 Wis. 643. It is void because the Ramseys were permitted to deal with the property in a way inconsistent with the ownership of the seller, and in a way which necessarily destroyed his lien or right to the property. *Wagon Works v. Carmen*, 109 Ind. 31.

The record brought to this court in this case does not show that the question of the constitutionality of this law was raised in the court below. This question cannot be raised in this court for the first time.

Before it can be declared unconstitutional it must clearly appear so. *Comm'rs of Leavenworth Co. v. Miller*, 7 Kas. 298 (*479); *People v. West*, 106 N. Y. 296. This law does not impair the obligation of the contract. *Colpetzer v. Trinity Church*, 24 Neb. 113; *Insurance Co. v. Cushman*, 108 U. S. 51; *Robertson v. Van Cleave*, 129 Ind. 217; *Davis v. Rupe*, 114 id. 588; *Cusic v. Douglas*, 3 Kas. 117 (*123).

There is no constitutional provision in this state against retrospective legislation. *Comm'rs of Sedgwick Co. v. Bunker*, 16 Kas. 504. The law in question applies to the remedy and not to the rights of the parties. Pom. Const. Law, § 609, *et seq.* It is in the nature of a rule of evidence. *People v. Turner*, 117 N. Y. 227; 22 N. E. Rep. 1022; 7 Cal. 486; *Sanders v. Greenstreet*, 23 Kas. 425. State legislatures have undoubted power to pass such acts. It is within the undoubted power of a state legislature to pass a recording act by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within a limited time, and the power is the same whether the deed is dated before or after the passage of the recording act, though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, and it is not a law impairing

the obligation of a contract. *Jackson v. Lamphire*, 3 Pet. 290; *Davis v. Rupe*, 114 Ind. 588; 17 N. E. Rep. 163; *Robertson v. Van Cleave*, 129 id. 217.

Article 5 of amendments to United States constitution is not applicable to the case at bar. *The State, ex rel., v. Majors*, 16 Kas. 444; *The State v. Barnett*, 3 id. 244 (* 250); *Barrow v. Mayor*, 7 Pet. 247. The phrase, "due process of law," means law in its regular course of administration, according to prescribed forms, and in accordance with the general rules for the protection of individual rights. *The State v. Whisner*, 35 Kas. 271, 277, 278. Due process of law is not necessarily judicial proceedings. *Gilchrist v. Schmidling*, 12 Kas. 210 (* 264), 217 (* 271).

The legislature is not required to name a day of the month when the act shall take effect. If the legislature requires the act to take effect after its publication, either in the official state paper or in the statute book, or upon an event that is certain and may be ascertained, it is sufficient in that respect. *Comm'rs of Cherokee Co. v. Chew*, 44 Kas. 165. This act was approved March 1, 1889.; published May 25, 1889; and gave reasonable notice.

*Lessenger & Beckwith*, and *J. L. Loar*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Under the written contract between the Moline Plow Company and Ramsey & Ramsey, the ownership of the goods in controversy was to remain in the plow company until they were fully paid for in cash. The goods levied upon were not sold at retail, or otherwise disposed of by the Ramseys, or either of them, but their creditors, on the 27th and 28th of May, 1889, levied upon the goods, under writs of attachment, to secure, if possible, their claims. Within the prior decisions of this court, the attaching creditors cannot be preferred to the Moline Plow Company. They cannot be regarded as purchasers in good faith for value.

(*Implement Co. v. Parlin & Orendorf Co.*, 51 Kas. 544, and cases cited; 33 Pac. Rep. 360; 5 Field, Briefs, § 265.) In *Poorman v. Witman*, 49 Kas. 697, about all that was decided was that there was no evidence to establish the fact that the property replevied " was in stock when the demand was made." Therefore, the principal question in this case is of the effect of chapter 255, Laws of 1889, regulating the recording of "title notes or evidences of conditional sales," upon the written instrument or contract of the plow company and the Ramseys. That act took effect on the 25th of May, 1889 — the date of its publication in the statute book.   Section 1 reads:

"That any and all instruments in writing, or promissory notes, now in existence or hereafter executed, evidencing the conditional sale of personal property, and that retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept, and when so deposited shall be subject to the law applicable to the filing of chattel mortgages; and any conditional verbal sale of personal property reserving to the vendor any title in the property sold shall be void as to creditors and innocent purchasers for value."

1. Written contract—conditional sale.

It was decided, in *Jackson v. Lamphire*, 3 Pet. (28 U. S.) 280, that

"It is within the undoubted powers of state legislatures to pass recording acts by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within a limited time; and the power is the same whether the deed is dated before or after the recording act.   Though the effect of such a deed is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law violating the obligation of contracts.   So, too, is the power to pass limitation laws.   Reasons of sound policy have led to the general adoption of laws of this description, and their validity cannot be questioned.   The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discre-

tion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Cases may occur where the provisions of a law on these subjects may be so unreasonable as to amount to a denial of a right, and to call for the interposition of this court."

See *Rawson Mfg. Co. v. Richards,* 69 Wis. 643. Therefore, we think, upon the authorities, that said chapter 255 applies to all the instruments in writing or promissory notes therein referred to, whether in existence at the date the act took effect, or thereafter executed, with the limitation, however, that there must be a reasonable time after the statute went into effect for the holders of such instruments or notes then in existence to comply with its provisions. Had the act been published on March 1, 1889, the date of its approval, or so soon afterward as to have given the plow company, having its office in Kansas City, Mo., reasonable time to deposit the original contract, or a true copy thereof, in the office of the register of deeds of Thomas county, before the levies of the attaching creditors, it would govern; and then, if such deposit had not been made, the contract would have been void as against the creditors. The act did not go into effect until its publication, on the 25th of May, 1889. The plow company was not required to deposit its contract for record until the act went into force. It had no knowledge when the act would go into force until its actual publication, on May 25, 1889, and the attaching creditors levied their writs on the 27th and 28th of May, 1889. There was no reasonable time between the 25th of May, 1889, and the levies of the attachments for the deposit of the contract for record. As there was not reasonable time after the act went into force to deposit for record the contract, it would be an impairment of the contract to hold that the said chapter 255 applies in this particular case. In *Burnes v. Simpson,* 9 Kas. 658, it was observed:

"A statute of limitations, that at once destroys the right of

*2. Instrument in writing—reasonable time to record.*

action, would undoubtedly be held to impair the obligation of the contract. But it seems well settled that the legislature may apply limitations as well to causes of action already existing as to those to be afterward created, and that the law may lessen the time in which an action may be brought, so that a reasonable time be allowed for the commencement of the action. . . . It has been held that statutes that fix a limitation that has already run, and yet give a reasonable time in which the action may be commenced before the statute operates, is not unconstitutional. (*Smith v. Morrison*, 22 Pick. 432; *Holcombe v. Tracy*, 2 Minn. 241; *Wilcox v. Williams*, 5 Nev. 206.) The defendant in error argues from this doctrine that the law of 1868 did not destroy the right of action at once. It was passed on the 25th of February, and did not go into effect until its publication, on the 31st of October thereafter. But it did not go into force because it was not published, and not because the legislature had fixed that time when it should go into force. Had the statutes been published in a week, then the law would have been in force one week after its passage. This would have been a reasonable time for bringing suit. The time given depended upon the public printer, and not on any action of the lawmaking power."

The principles applicable to the power of the legislature to pass limitation laws also apply to the passage of recording acts; but in either case the statute must give reasonable time in which the action may be commenced or the instrument recorded, before it operates upon rights of action or existing written instruments. The legislature cannot destroy the right of action or render void a valid instrument if no reasonable time is given to comply with the terms of limitation or registration. The judgment of the district court will be reversed, and, upon the agreed statement of facts, judgment will be directed for the plaintiff below—the plaintiff in error.

All the Justices concurring.