(64 App. Div. 268.)

### BARRY v. VILLAGE OF PORT JERVIS.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—PERSONAL INJURIES—NOTICE OF ACTION—TIME LIMITATION—CONSTITUTIONALITY OF STATUTE.

    Laws 1896, c. 529, incorporates the village of Port Jervis, and imposes on it the duty of keeping its highways in repair. Section 82 provides that no action for personal injuries shall be maintained unless notice of intention to commence such action, and of the time and place of the injuries, shall have been filed with the village clerk within 48 hours after the cause of action accrued. Const. art. 8, § 3, provides that all New York corporations shall be subject to be sued in like cases as natural persons. Id. art. 1, § 16, adopts the common law, by which a corporation is liable to a private person for an injury from its neglect to discharge a duty. *Held* that, as the right to sue the village for injuries from a defective highway existed by virtue of the constitution and the common law of New York, section 82 was unconstitutional as to its requirement of notice within 48 hours, as denying the due process of law guarantied by Const. N. Y. art. 1, § 6, and Const. U. S. Amend. art. 14.

Appeal from special term, Orange county.

Action by John J. Barry against the village of Port Jervis. From an interlocutory judgment overruling defendant's demurrer to the complaint, it appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

R. Ed. Schofield, for appellant.

Frank Lybolt, for respondent.

WOODWARD, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff by falling into a hole in one of the highways of the defendant village, and the defendant demurs to the complaint, alleging that it does not state facts sufficient to constitute a cause of action, in that the complaint shows upon its face that the plaintiff did not file with the clerk of the village, within 48 hours of the accident, the notice required by section 82 of chapter 529 of the Laws of 1896, constituting the charter of the village of Port Jervis. A similar question

was presented in Green v. Village of Port Jervis, 55 App. Div. 58, 66 N. Y. Supp. 1042, where it was held that a notice served within 5 days of the time of the accident, during which time the plaintiff was unable, from the effects of the injury, to prepare the notice, or to give the necessary information for the preparation of such notice, was a substantial compliance with the provisions of the statute. In the case now before us, while the allegations of the complaint would seem to bring the plaintiff within the rule laid down in that case, the notice was not served until 30 days after the accident, and then by the plaintiff's wife; and it may be questioned whether she was in any better position to give the notice at the end of 30 days then she was within the limit fixed by the statute. It seems proper, therefore, to consider this question broadly, and to determine whether the rights of the plaintiff can be made to depend upon the giving of the notice provided for by the charter of the defendant village. The notice which was finally served upon the defendant, and which was received and acted upon without protest, was made a part of the complaint, and for the purposes of the demurrer is to be regarded as true. This notice recites that:

"The reason this notice has not been heretofore served is that the serious effects of such injury did not develop for several days after the same was received; that when the same did develop claimant was in a critical physical condition, unable to draft or serve notice of same, has ever since remained, and still is, physically and mentally unable to himself sign or verify such notice or claim, or to request or have others make and serve same for him; and that by reason thereof, claimant has not known and does not yet know that a cause of action has accrued to him because of the matters here stated and set forth."

Under these circumstances, has the plaintiff a right to recover? Does his right to recover depend, in any measure, upon the provisions of section 82 of chapter 529 of the Laws of 1896? The provision of section 82 now under consideration is as follows:

"No action against said village for damages for personal injuries alleged to have been sustained by reason of negligence of such village, or of any departments, board, officer, agent or employé thereof, shall be maintained unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless notice of intention to commence such action and of the precise time and place at which the injuries were received shall have been filed with the clerk of the village within forty-eight hours after such cause of action shall have accrued," etc.

While it is true, as suggested in Green v. Village of Port Jervis, supra, that the provision requiring the filing of notice is not, strictly speaking, a limitation of the cause of action, it so far affects the right of recovery as to constitute a bar to the maintenance of an action, and to all intents and purposes has the same effect as though the legislature had declared in the first clause of the provision above quoted that:

"No action against said village for damages for personal injuries alleged to have been sustained by reason of negligence of such village * * * shall be maintained unless the same shall be commenced within forty-eight hours after the cause of action therefor shall have accrued."

This is the spirit of the enactment; for it is difficult to distinguish any difference between giving notice of an intention to commence

an action, with details of the basis of the claim, and the serving of a summons in an action, these being the preliminary steps to the assertion of the plaintiff's rights in court. The legislature would have the same right, and the effect would be the same upon the rights of the plaintiff, to require that a summons should be served within 48 hours of the happening of the accident, as it has to require that a notice of such intention shall be filed within the same period; and it is from this viewpoint that we must consider the provision requiring a notice, for the validity of a law is to be determined by its purpose, and its reasonable and practical effect and operation, though enacted under the guise of some general power which the legislature may lawfully exercise, but which may be, and frequently is, used in such a manner as to encroach, by design or otherwise, upon the positive restraints of the constitution. What the legislature cannot do directly, it cannot do indirectly, as the constitution guards as effectually against insidious approaches as an open and direct attack. Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Dexter v. City of Boston, 176 Mass. 247, 251, 57 N. E. 379; City of Rochester v. West, 164 N. Y. 510, 514, 58 N. E. 673, and authorities there cited.

If it were entirely accurate, as suggested in a dictum of Earl, C. J., in Curry v. City of Buffalo, 135 N. Y. 366, 370, 32 N. E. 80, that "the whole matter of the maintenance of this class of actions was within the control of the legislature, it could refuse a right of action against municipalities for such injuries, and it could impose any conditions precedent to the maintenance of such actions," there would be little doubt that the provisions of the charter of the village of Port Jervis would be controlling, no matter how unreasonable or how unjust they might be. We are of opinion, however, that the learned jurist who wrote in this case did not use this language in the sense it is commonly understood, and which seems to assume that the action for negligence against a municipality is based upon statutory law; for no principle of the jurisprudence of this state is better established than that the municipalities of the grade of villages and cities are answerable for negligence at common law, and that this right of action cannot be taken away without an entire revolution in our system of laws. It is true, of course, that the legislature might, in its discretion, refuse to make municipalities responsible for the condition of their highways within the corporate limits, in which case the municipality would owe no duty to individuals or the public, and in this way it could refuse a right of action; but, so long as it imposes the duty of keeping the highways in repair as a condition of granting a municipal charter, it cannot take away the common-law right of action for a neglect of duty by which the individual suffers a special damage, without at the same time abolishing the common law in its entirety as it relates to the question of negligence. Every corporation organized within this state, whether it be a municipal or a business corporation, takes its charter with the condition imposed by the constitution that it "shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons." Const. art. 8, § 3. This is not left to legisla-

tive discretion. It is fixed by the fundamental law, and every corporation is liable to the same extent and under the same circumstances as a natural person for the consequences of wrongful acts, and will be held to respond in a civil action at the suit of an injured party for every grade and description of forcible, malicious, or negligent tort or wrong which it commits, however foreign to its nature or beyond its granted powers the wrongful transaction may be. Railroad Co. v. Schuyler, 34 N. Y. 30, 49, and authorities there cited. It is violated duty that furnishes the ground for an action of negligence (Brewer v. Railroad Co., 124 N. Y. 59, 65, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647), and it is absolutely immaterial whether this violation of duty is by an individual or a corporation. The rule is the same. Whenever facts and circumstances can be shown to exist which create a duty on the part of the defendant towards the plaintiff, and there has been a breach of that duty, and a consequent damage to the plaintiff, an action for damages is maintainable. I Add. Torts (Dudley & Baylies' Ed.) 18. This is the rule of the common law, which, by the provisions of article 1, § 16, of the state constitution, is made the law of the land until altered or abolished by the legislature, and it is at the foundation of every action for negligence within this state. It will thus be seen that the law of negligence is so interwoven with the fabric of our jurisprudence that it is practically impossible to get clear from it by any action of the legislature. It must remodel the entire law of negligence in its relation to individuals and corporations, or it must continue to recognize the right of an individual to an action for damages, where the municipality, charged with a duty to the plaintiff, has neglected that duty to the injury of the plaintiff.

It may not, at this time, be out of place to review the authorities upon this point; the dictum of Earl, C. J., being the only note of discord in any court of authority here, and this was so entirely unnecessary to the determination of the case then before the court that it can have no controlling weight, even if it be accepted in the sense in which it is often cited in support of the wrongful effort of municipalities to avoid their obligations to those whom they have injured by their negligence. The confusion upon the question results, not from any doubt as to the nature of the action, but from its application. Upon this point Dillon on Municipal Corporations (section 761) says:

"In considering the subject of the implied liability of municipal corporations to civil actions for misconduct or neglect on their part, or on the part of their officers in respect to corporate duties, resulting in injuries to individuals, it is essential, under the authorities, to bear in mind the distinction, pointed out in a former chapter and to be noticed again hereafter, between municipal corporations proper, such as towns and cities specially chartered or voluntarily organized under general acts, and involuntary quasi corporations, such as townships, school districts, and counties (as these organizations exist in most of the states), including therein for this purpose the peculiar organization, before referred to, known as the New England town. The decisions of the courts in this country are almost uniform in holding the former class of corporations to a much more extended liability than the latter, even where the latter are invested with corporate capacity and with the power of taxation; but respecting the grounds for this differ-

ence there is considerable diversity of opinion. The principle involved lies at the basis of a large class of actions against municipal corporations, and it is desirable briefly to examine it in the light of the adjudications which have established it. It may, in the first place, be remarked that it is a general principle of law, founded in reason, that, where one suffers an injury by the neglect of any duty owing to him which rests upon another, the person injured has his action. This doctrine applies, not only to individuals, but to private corporations aggregate, and it obliges such corporations to respond in a private action, though such action be not expressly given by statute, for the damages which another may suffer by reason of neglect or default to perform any corporate duty."

In the early case of Mower v. Inhabitants of Leicester, 9 Mass. 247, 6 Am. Dec. 63, it was held that a town was not liable in a common-law action for damages sustained by an individual through a defect in the highways of the town. This case, and the English case on which it was based, have been generally followed in New England, and have resulted in a very general recognition of the doctrine that, without a statute giving it, no private action lies against towns or other quasi corporations for the neglect of duties enjoined upon them by general legislative enactment applicable to all such corporations as governmental or public agencies. But this rule of law is of limited application. It is applied in the case of towns only to the neglect or omission of a town to perform those duties which are imposed on all towns without their corporate assent, and exclusively for public purposes, and not to the neglect of those obligations which a town incurs when a special duty is imposed on it with its consent, express or implied, or a special authority is conferred on it at its request. In the latter case a town is subject to the same liabilities, for the neglect of those special duties, to which private corporations would be, if the same duties were imposed or the same authority conferred on them, including their liability for the wrongful neglect, as well as the wrongful acts, of their officers and agents. Bigelow v. Inhabitants of Randolph, 14 Gray, 541, 543; Oliver v. City of Worcester, 102 Mass. 489, 500, 3 Am. Rep. 485, and authorities there cited.

Continuing this subject, Dillon, at section 764, says:

"But as respects municipal corporations proper, whether specially chartered or voluntarily organized under general acts of the character before alluded to, it is, we think, universally considered, even in the absence of a statute governing the action, that they are liable for acts of misfeasance positively injurious to individuals, done by their authorized agents or officers, in the course of performance of corporate powers constitutionally conferred, or in the execution of corporate duties; and it is almost, but not quite, uniform doctrine of the courts that they are also liable where the wrong resulting in an injury to others consists in a mere neglect or omission to perform an absolute and perfect (as distinguished from a discretionary, quasi judicial, or imperfect) corporate duty, owing by the corporation to the plaintiff, or in the performance of which he is specially interested."

Again, at section 778 (original edition), this same authority says:

"The doctrine may be considered as established that where a duty is a corporate one,—that is, one which rests upon the municipality in respect of its special or local interests, and not as a public agency, and is absolute and perfect, and not discretionary or judicial in its nature, and is one owing to the plaintiff, or in the performance of which he is specially interested,—the corporation is liable in a civil action for the damages result-

ing to individuals by its neglect to perform the duty, or for the want of proper care or want of reasonable skill of its officers or servants acting under its direction or authority in the execution of such a duty; and, with the qualifications stated, it is liable on the same principles and to the same extent as an individual or a private corporation would be under like circumstances. * * * So in respect to its failure to keep its streets in a safe condition for public use, where this is a duty resting upon it."

See Cooley, Const. Lim. (6th Ed.) p. 302.

In this state, in the case of Bailey v. Mayor, etc., 3 Hill, 531, 38 Am. Dec. 669, Chief Justice Nelson clearly stated the distinction between acts done by the city or town as a municipal or public body exclusively for public purposes, and those done for its own private advantage or emolument, and assumed, as unquestionable, that:

"Municipal corporations, in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly. As such, they are bound to repair bridges, highways, and churches; are liable to poor rates; and, in a word, to the discharge of any other duty or obligation to which an individual owner would be subject."

In a note to Conrad v. Village of Ithaca, 16 N. Y. 158, is given the opinion of Selden, J., in Weet v. Trustees (see Id. 161), which is held to lay down the principles on which the leading case was decided. In this there is a careful review of the authorities, and the conclusion is reached that:

"If we regard the injury to the plaintiff as the result of mere neglect to keep the highways of the village in repair, the defendants would be responsible in this action for such neglect, upon the ground that their acceptance of the franchise granted by their charter raised an implied undertaking or contract on their part to perform that duty, which, upon the principles referred to, inures to the benefit of every individual interested in such performance."

In the opinion of Selden, J., in the case cited, is given the rule which makes municipal corporations liable under the maxim of respondeat superior, as follows:

"Whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to inure to the benefit of every individual interested in its performance."

See Missano v. City of New York, 160 N. Y. 123, 127, 54 N. E. 744, where the above rule is cited with approval.

In Storrs v. City of Utica, 17 N. Y. 104, 72 Am. Dec. 437, the court, in considering a charge to a jury in which it had been laid down as the law that if, in the course of a public improvement, it became necessary for the city corporation to make an excavation in a city street, so as to render it unfit or dangerous to be traveled upon, it became the duty of the city to take measures, either by lighting the street or otherwise, to warn travelers of the danger, say:

"When a case can be found of respectable authority holding that a city corporation, having the exclusive control of the streets, owes to the public no duty in respect to them, and is not liable for accidents occasioned by gross neglect, then some progress will have been made in the argument for

exonerating the defendant from liability for the injuries now in question. * * * That the duty exists is not denied, and the doctrine that persons receiving special injury from its nonobservance can maintain an action therefor was examined by this court and asserted in the recent case of Hickok v. Village of Plattsburgh, 16 N. Y. 161."

To the same effect see Lloyd v. Mayor, etc., 5 N. Y. 369, 374, 375, 55 Am. Dec. 347.

In Maxmilian v. Mayor, etc., 62 N. Y. 160, 20 Am. Rep. 468, the distinction between the duties which belong to the municipality and those which are merely a part of the administration of government is clearly pointed out, and many of the authorities are collated. The rule is here stated to be that where the duty is upon the city itself, and not upon public officers appointed by it, where it accepts the duty and the power to perform it, and itself, by its own agents, sets about the work, or undertakes to set about it, by its own agents, then, for negligent omission to do or for doing in a negligent manner, it may be liable. The court adds, upon the authority of Conrad v. Village of Ithaca, supra, that the duty of keeping in repair streets, bridges, and other common ways of passage, and sewers, and a liability for neglect to perform that duty, rests upon an express or implied acceptance of the power and an agreement so to do. It is a duty with which the city is charged for its own corporate benefit, to be performed by its own agents as its own corporate act.

In Bieling v. City of Brooklyn, 120 N. Y. 98, 24 N. E. 389, the court recognize that "there are various duties which are legitimately those of the corporation, among which is that of taking care of the streets within it"; and it was said that the city would be responsible for the consequences resulting from their negligent action or omission in that service injuriously to individuals. The court in this case recognized the fact that the action for negligence is one at common law, for it is said (page 107, 120 N. Y., page 391, 24 N. E.) that:

"This is in harmony with the common-law rule applicable to municipal officers who are charged with the performance of corporate duties and may employ subordinates to aid in their accomplishment. The corporation in such case, and not he, is the superior, and liable to third persons for the injuries occasioned to them by the negligence of such subordinates."

See, also, Nagel v. City of Buffalo, 34 Hun, 1, 4, where the court say:

"His cause of action is not given by any statute, but is founded on the principles of the common law."

In Seymour v. Village of Salamanca, 137 N. Y. 364, 33 N. E. 304, the court say that, when a street has been opened for public travel, the ministerial duty to keep the street and sidewalk in repair attaches, and for a negligent omission by the village authorities to perform such duty, whereby a person, lawfully passing along the street and himself using due care, is injured, an action lies in his favor against the village for damages.

In Springfield Fire & Marine Ins. Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667, it is said that, when we find that the power conferred has relation

to public purposes and is for the public good, it is to be classified as governmental in its nature, and it appertains to the corporation in its political character; but when it relates to the accomplishment of private corporate purposes, in which the public is only indirectly concerned, it is private in its nature, and the municipal corporation, in respect to its exercise, is regarded as a legal individual. In the former case the corporation is exempt from all liability, whether for nonuser or misuser; while in the latter case it may be held to that degree of responsibility which would attach to an ordinary private corporation. Where a duty specifically enjoined upon the corporation as such has been wholly neglected by its agents, and an injury to an individual arises in consequence of the neglect, the corporation will be held responsible.

In Reed v. Bank, 130 Mass. 443, 39 Am. Rep. 468, the court say:

"It is too late to discuss the question, once much debated, whether a corporation can commit a trespass, or is liable in an action on the case, or subject generally to actions of tort as individuals are. The books of reports for a quarter of a century show that a very large proportion of actions of this nature, both for nonfeasance and for misfeasance, are against corporations. * * * Their powers and their duties are defined by their charters, and the rights and duties are legal rights and duties, to be enforced by the ordinary rules of law. * * * It can no more permit a dangerous pitfall or a dangerous obstruction to exist upon its land, to the injury of another, than can any other corporation or an individual. In its business transactions with individuals, it is subject to the same rules of law as other corporations or individuals."

See Bank v. Graham, 100 U. S. 699, 702, 25 L. Ed. 750; Fogg v. Railroad Corp., 148 Mass. 513, 516, 20 N. E. 109, 12 Am. St. Rep. 583; Nims v. Boys' School, 160 Mass. 177, 35 N. E. 776, 22 L. R. A. 364, 39 Am. St. Rep. 467.

In Railroad Co. v. Quigley, 21 How. 202, 210, 16 L. Ed. 73, 75, the court say:

"With much wariness, and after close and exact scrutiny into the nature of their constitution, have the judicial tribunals determined the legal relations which are established for the corporation by their governing body, and their agents, with the natural persons with whom they are brought into contact or collision. The result of the cases is that for acts done by the agents of a corporation, either in contractu or in delicto, in the course of its business, and of their employment, the corporation is responsible, as an individual is responsible under similar circumstances."

It will thus be seen that the common-law rule with reference to corporations is the same as that laid down by the constitution of this state. They are to "have the right to sue and shall be subject to be sued in all courts in like cases as natural persons"; and the distinction which is made between quasi public corporations and municipal corporations proper is no exception to the general rule recognized by the common law. A natural person acting in a governmental capacity cannot be sued in the courts of this state with respect to his duties as a part of the government, because the government itself cannot be sued; and the same limitation applies to a quasi-public municipal corporation. The whole proposition is concisely stated by the court in Water Co. v. Ware, 16 Wall. 566, 573, 21 L. Ed. 485, 487, where it is said:

"Cities and towns are usually required by statute to keep their streets and highways safe and convenient for travelers, and if they neglect so to do, in a case where that duty is imposed by law, and suffer the same to get out of repair and defective, and any person as a traveler receives injury through such defect either to his person or property, the delinquent corporation is responsible in damages to the injured party. Such a party, however, cannot maintain an action against the corporation grounded solely on the defect and want of repair in the highway; but he must also allege and prove that the corporation had notice of the defect or want of repair, and that he was injured, either in person or property, in consequence of the unsafe and inconvenient state of the highway, as the duty to repair in such cases is a duty owed to the public, and consequently, if one person might sue for his proportion of the damages for the nonperformance of the duty, then every other member of the community would have the same right of action, which would be ruinous to the corporation, and for that reason it was held at common law that no action founded merely on the neglect to repair would lie. Nor will an action lie in such a case at the present time; but it is settled law, by the highest authority of the country from which the common law is derived, that where it appears that the corporation is under a legal obligation to repair the way in question, and that such obligation is a matter of general and public concern, and also that the place in question is out of repair, and that the plaintiff has sustained some peculiar damage in his person or property by means of such defect or want of repair, the corporation, if the means of performing the duty to make the repairs are within their control, is liable to compensate the injured party for the injury which he suffered from their neglect."

See Weightman v. Corporation of Washington, 1 Black, 39, 52, 53, 17 L. Ed. 52, and authorities there cited; Barnes v. District of Columbia, 91 U. S. 540, 551, 23 L. Ed. 440, and authorities there cited.

According to the Weightman Case, supra, it was decided in the case of Henly v. Mayor, etc., 5 Bing. 91, which was the case referred to as establishing the common law in Water Co. v. Ware, supra, that in order to make a good declaration, it must appear— First, that the corporation is under a legal obligation to repair the place in question; secondly, that such obligation is matter of so general and public concern that an indictment would lie against the corporation for nonrepair; thirdly, that the place in question is out of repair; and, lastly, that the plaintiff has sustained some peculiar damage beyond the rest of the king's subjects by want of such repair; and after explaining these several conditions Baron Parke, who wrote the opinion of the house of lords in the final appeal, stated that it was clear and undoubted law that, wherever an indictment would lie for nonrepair, an action on the case would lie at the suit of a party sustaining any particular damage.

The common law of England is derived from immemorial usage and custom, originating from the acts of parliament not recorded, or which have been destroyed or lost. It is a system of jurisprudence founded on the principles of justice, and in the United States is composed partly of the common law of England and partly of the usages which have grown up in, and are indigenous to, the United States. 6 Am. & Eng. Enc. Law, 270, 271, and notes; Bouv. Law Dict. tit. "Law." The common law forms the basis of our jurisprudence, and rights and liabilities, except so far as modified by statute, must be decided in accordance with its principles (Bogardus v. Trin-

ity Church, 4 Paige, 178); and it is presumed to exist in this state in the absence of proof to the contrary (6 Am. & Eng. Enc. Law, 281, 282; Stokes v. Macken, 62 Barb. 145). No one who has questioned that an action for negligence against a municipality was an action at common law has ever produced a statute giving a right of action for negligence, except in those instances in which the law has been extended in its operation, and none of them has ever been able to show where the legislature has abolished this right of action; and the presumption must be, therefore, that it exists, with whatever of modification, amplification, or adaptation which has grown up within the jurisprudence of the state. To these we have sufficiently adverted already, and it may be stated as a result of these authorities that the plaintiff in the present case had a right of action, independently of any action on the part of the legislature, except in so far as the legislative power of the state was invoked in the creation of the village of Port Jervis, and in imposing the duty of keeping its streets and highways in a safe condition for public travel. When this was done, and when the defendant, by its negligence, produced a condition of affairs by which the plaintiff fell and was injured, through no fault of his own, a complete right of action came into existence by operation of the common law of the state of New York, and the municipal corporation known as the "Village of Port Jervis" became liable. The right of the plaintiff to recover was complete, and the question to be determined is whether the legislature of this state had the power to step in and take that right away without affording the plaintiff a reasonable opportunity to invoke the aid of the courts,—whether the provision of the charter of the village of Port Jervis, requiring notice of intention to sue to be served within 48 hours of the happening of the accident, is due process of law.

Under the provisions of the charter of the village of Port Jervis, there are two rules in respect to the same class of actions. If a street railroad corporation, a business corporation, or an individual is guilty of negligence, resulting in injury to another, a right of action vests in the injured person, and he may bring an action at any time within the general statute of limitations to recover damages, without giving notice of such intention. Any other rule would result in a popular storm of indignation. But a different rule is attempted to be brought into operation when the same injury results from the negligence of the municipal corporation, and the injured person, although rendered unconscious and absolutely incapable of doing any kind of business, is required to give a notice of his intention within a period of 48 hours. In effect the legislature has attempted to say that while it could not prevent a cause of action accruing as against the corporation, which it had charged with the duty of keeping the streets of the village in a reasonably safe condition for public travel, if the municipality could keep the injured party unconscious or in ignorance of his rights for a period of two days, one of which may be a legal holiday and the other a Sunday, it would absolve it from all legal responsibility for its wrong, while other corporations and individuals, for the same wrong, should be held to the common-law liability during the entire statutory

period governing actions of this character. It is not to be doubted that the legislature may regulate the right to bring an action against a municipal corporation for a tort or upon contract, by imposing conditions precedent to be observed by the plaintiff, or make a special statute of limitations, thereby changing the ordinary rule and restricting the usual remedy in such cases (Jones v. City of Albany, 151 N. Y. 223, 226, 45 N. E. 557); but a right to regulate is not a power arbitrarily to destroy a right vesting in the plaintiff, and the power has been legitimately exercised when it has been used to guard against the imposition of unfounded claims by at once informing the municipality of their existence, so that its officers may the more readily pursue an investigation of their merits (Sheehy v. City of New York, 160 N. Y. 139, 143, 54 N. E. 749).

But a special statute of limitations (for such is the effect of the clause of the statute now under consideration, which cuts down the right of the plaintiff to bring his action to a period of 48 hours, although he may be totally disabled through the wrong of the defendant) is not necessary to the protection of the municipality against impositions, and it is such an unreasonable limitation upon the rights of the plaintiff that it cannot be tolerated in a jurisdiction which aims to do substantial justice.

In the case of Westcott v. Fargo, 61 N. Y. 542, 551, 19 Am. Rep. 300, 302, where by contract with an express company it was provided that no claim for damages would be allowed unless made in writing within 30 days, the court say:

"Had we come to the conclusion that the clause was a condition precedent, the question would have been open to consideration whether so short a time was reasonable."

And the courts have generally held that the question of whether such statutes were reasonable was a judicial one, and that an intention to change the rule of the common law will not be presumed from any doubtful statutory provisions; the presumption being that no such change is intended, unless the statute is clear and explicit in that direction. Jones v. City of Albany, supra.

The right of action which vested in the plaintiff under the constitution and the common law (for the facts alleged in the complaint must for the purposes of the demurrer be taken as true) is property. It has value. Hein v. Davidson, 96 N. Y. 175, 177, 48 Am. Rep. 612; Statutory Construction Law, §§ 2, 4 (Gen. Laws, c. 1); Bran. 14th Amend. 118; Bennett v. Bennett, 116 N. Y. 584, 598, 23 N. E. 17, 6 L. R. A. 553. In the last case cited, it is said that:

"While a right of action for a personal injury may not be within the definition, as frequently given, of a chose in action, that term in its broadest sense does embrace it."

Looking at this right of action, vesting in the plaintiff under the common law as property, we are to consider the provisions of the charter of Port Jervis as an independent statute modifying the law of the state, and to determine whether the plaintiff is "deprived of life, liberty, or property without due process of law." Article 1, § 6, Const. N. Y.; Amend. 14, Const. U. S. Upon this point the

court of appeals has declared, in the case of Gilbert v. Ackerman, 159 N. Y. 118, 124, 53 N. E. 753, 754, 45 L. R. A. 118, 120, that:

"The right possessed by a person of enforcing his claim against another is property, and if a statute of limitations, acting upon that right, deprives the claimant of a reasonable time within which suit may be brought, it violates the constitutional provision that no person shall be deprived of property without due process of law."

And this view is fully sustained by the authorities. What constitutes a reasonable time is not to be determined arbitrarily. We are not to say that a man, in the exercise of a high degree of mental and physical activity, might comply with the condition, and therefore it is reasonable; but we are to consider it judicially. We are to place ourselves in the position of the legislators, and must measure the time of the limitation in the midst of the circumstances which surround them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts. Terry v. Anderson, 95 U. S. 628, 633, 24 L. Ed. 365; Wheeler v. Jackson, 137 U. S. 245, 255, 11 Sup. Ct. 76, 34 L. Ed. 659, and authorities there cited.

The court will take judicial notice of the fact that there was, in regard to the statute under consideration in this case, no grave or public exigency in existence which appealed to the legislature, in behalf of the whole people and for the public interests, for the enactment of a statute curtailing to the shortest possible legal time the right to commence actions, which right, up to the passage of this act, was without other limitations than those imposed by the general statute of limitations. Parmenter v. State, 135 N. Y. 154, 170, 31 N. E. 1035. And the question here presented is to be considered in the light of a normal condition of society, where a single community asks to be relieved of the responsibility which the law imposes as a condition of its incorporation; the rule being that:

"Whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by a covenant or agreement, either express or implied, to do certain things, such individual or corporation is liable, in the case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases the contract made with the sovereign power is deemed to inure to the benefit of every individual interested in its performance." Missano v. City of New York, 160 N. Y. 123, 127, 54 N. E. 744.

Cooley, Const. Lim. (6th Ed.) p. 449, lays down what we conceive to be the true test of the reasonableness of statutes which limit the rights of persons to recover. "All limitation laws, however," says this great author, "must proceed on the theory that the party, by lapse of time and omissions on his part, has forfeited his right to assert his title in the law." These laws must also "proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing right of claimants without affording this opportunity. If it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." Can the plaintiff, sick, sore, and distracted by the calamity brought upon him through the wrongful act of the defend-

ant, be said to have had a "full opportunity to try his rights in the courts," when within 48 hours of the happening of the accident he is obliged to file a notice of his intention to sue, in order to preserve his right of action? Can it be said that through a lapse of time and his omissions he has forfeited his right to assert his title in the law? Is there any consideration of public policy which can justify such an attempt to extinguish rights arbitrarily? We think not. We think that "due process of law" requires that the plaintiff should have a fair opportunity to be heard before the issues are decided (Railroad Co. v. Iowa, 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 467; Railroad Co. v. Schmidt, 177 U. S. 230, 236, 20 Sup. Ct. 620, 44 L. Ed. 747); that it must be pursued in the ordinary mode prescribed by the law, and must be adapted to the end to be attained; and, where-ever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought (Hagar v. Reclamation Dist., 111 U. S. 701, 708, 4 Sup. Ct. 663, 28 L. Ed. 569, and authority cited; Holden v. Hardy, 169 U. S. 366, 390, 18 Sup. Ct. 383, 42 L. Ed. 780). Due process is secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice. Caldwell v. Texas, 137 U. S. 692, 697, 11 Sup. Ct. 224, 34 L. Ed. 816.

In Wynehamer v. People, 13 N. Y. 378, 395, citing authorities, it was said that due process of law requires—

"A judicial investigation, not to be governed by a law specially enacted to take away and destroy existing rights, but confined to the question whether, under pre-existing rules of conduct, the right in controversy has been lawfully acquired and is lawfully possessed."

If we keep in mind that the right of action asserted by the plaintiff accrued under the operation of the constitution and the common law, there can be no doubt that the "right in controversy has been lawfully acquired and is lawfully possessed," or that there has been an effort to take away and destroy, by a law specially enacted for that purpose, the existing rights of the plaintiff. So it was said, in Taylor v. Porter, 4 Hill, 140, 40 Am. Dec. 274, in speaking of the law of the land, which is synonymous with due process of law (2 Kent, Comm. 13), that:

"These words do not mean a statute passed by the legislature for the purpose of working the wrong. The meaning is that no member of the state shall be disfranchised, or deprived of any right or privilege, unless the matter shall be adjudged against him upon trial had according to the course of the common law. It must be ascertained judicially that he has forfeited his privileges, or that some one else has a superior title to the property he possesses, before either can be taken from him. It cannot be done by legislation."

See White v. White, 5 Barb. 474; People v. Toynbee, 20 Barb. 168.

In People v. Sickles, 156 N. Y. 541, 547, 51 N. E. 288, 290, it is said that due process of law—

"Means that every citizen shall have his day in court, and that he shall have the benefit of those rules of the common law, generally deemed to be fundamental in their nature, because sanctioned by reason, by which judicial trials are governed. These rules, which secure to the accused a judicial

trial, it is beyond the power of the legislature to subvert. Wynehamer v. People, 13 N. Y. 378, 447. It is beyond its power to deprive a person of his liberty, or to deprive him of his property, by mere legislation. It is not beyond the legislative power to regulate what shall be the due process of the law by which the citizen may be put upon his trial concerning his liberty or his property, provided that the statute destroys none of those safeguards to individual freedom and rights, which the people of England finally acquired for themselves, and which, as part of the common law of the land, we took over and adopted in the formation of a state government. They are preserved to all persons by the constitution of the state, and it is the duty of the judicial branch of the government to uphold them whenever brought into question."

In People v. King, 110 N. Y. 418, 425, 18 N. E. 245, 246, 1 L. R. A. 293, 294, 6 Am. St. Rep. 389, 392, it is said:

"It is not necessary at this day to enter into any argument to prove that the clause in the bill of rights that no person 'shall be deprived of life, liberty, or property without due process of law' (Const. art. 1, § 6) is to have a large and liberal interpretation, and that the fundamental principle of free government, expressed in these words, protects not only life, liberty, and property, in a strict, technical sense, against unlawful invasion by the government, in the exercise of governmental power in any of its departments, but also protects every essential incident to the enjoyment of these rights."

To summarize these and many other authorities which might be cited along these lines, and to apply them to this case, it may be said that the plaintiff could not be lawfully deprived of his property in the right of action which accrued to him by reason of the negligence of the defendant, without a hearing according to the rules of the law, or without a sufficient lapse of time and neglect of action to warrant the court in holding that he had waived his rights. A mere statute, fixing an arbitrary time, without any reference to the condition of the plaintiff, is not due process of law. He must have an opportunity to be heard, and this opportunity cannot be limited in such a manner as to defeat his rights without any volition on his part, or any neglect of that reasonable diligence which a suitor is bound to exercise in pursuit of his rights. The question of what is reasonable time must be answered in view of all the facts surrounding the plaintiff at the time of the accident and subsequent thereto, and is not to be decided with reference to the bare fact as to whether sufficient time was allowed for a swift individual to make out the papers, and, setting out at once, find and serve upon the defendant the process necessary to commence the action. Parmenter v. State, 135 N. Y. 154, 167, 31 N. E. 1035.

In the case cited, the rule was recognized and asserted that statutes which bear only upon the time in which to bring actions have been held to affect only the remedy upon contract, as distinguished from its obligation, provided a reasonable time were left in which a party might commence his action after the passage of the statute (pages 166, 167, 135 N. Y., and page 1040, 31 N. E., citing authorities); and it was held that:

"If the curtailment of the right to file a claim is to be regarded as the same in effect as the shortening of a statute of limitations, I think there can be no doubt that, in such a case as this, an act which leaves a period of less than eight weeks after its passage in which to commence an action,

which right was before unlimited as to time, would not leave a reasonable time in which to learn of the passage of the statute, elect what course to pursue, and, having made the election, to carry out the same."

Again, it was said, in the same case, that:

"The subsequent passage of the act of 1884, by which a few days over three months after its passage was permitted to a claimant in which to file his claim, would not of itself, in the case between citizens, provide a reasonable time; and it ought not to be so regarded when viewed in connection with the act of 1883. The latter act would not, as I have said, leave a reasonable time as between citizens; and hence one who had not availed himself of its provisions could not be cut off from his rights under the general statutes by an act which gave him but three months thereafter in which to file a claim which, when it accrued, was a right unlimited in time by any statute whatever."

It is true, of course, that the clause of the charter of the village of Port Jervis was in effect at the time of this accident; but, as the right of action accrued under the constitution and the common law, the clause in question must be deemed to have been an independent statute, limiting the right to file the claim or notice of intention of bringing the action, and as such it is within the reason of the rule as asserted in the case cited. It does not afford the plaintiff a reasonable time in which to make his election of what course to pursue. While yet his injuries have remained undeveloped, so that it is impossible for him to have any intention, the period fixed by the statute passes, and when the extent of his injuries becomes known he is without a remedy, if this provision of the charter is to be sustained. It is a general rule that whenever one owes another a duty, whether such duty be imposed by voluntary contract or by statute, a breach of that duty, causing damage, gives a cause of action. Duty and right are correlative; and, where a duty is imposed, there must be a right to have it performed. Willy v. Mulledy, 78 N. Y. 310, 314, 34 Am. Rep. 536, and authorities there cited.

In Berry v. Ransdall, 4 Metc. (Ky.) 292 (cited in Parmenter v. State, 135 N. Y. 169, 31 N. E. 1041), it was held that a statute limiting the time to commence action on existing causes of action to 30 days was unreasonable and invalid. See authorities there cited and discussed.

In Plow Co. v. Witham, 52 Kan. 190, 34 Pac. 752, a statute which provided that instruments evidencing a conditional sale must be recorded within 3 days was held to be unreasonable and void. See, also, Pope's Ex'r v. Ashley's Ex'r, 13 Ark. 268; Wahlgren v. City of Kansas City, 42 Kan. 246, 21 Pac. 1069.

In the case of Jennings v. Railway Co., 127 N. Y. 438, 28 N. E. 394, the plaintiffs had entered into a contract with the railroad company for the transportation of a quantity of potatoes, aggregating several car loads. Among the conditions of the contract was one that:

"No claim for damages to, loss of, or detention of any goods, for which the company is accountable, shall be allowed unless notice in writing and particulars of the claim for said loss, damage, or detention are given to station freight agent at or nearest to the place of delivery within 36 hours after the goods in respect to which said claim is made are delivered."

No such notice was given.   Upon appeal the court say (page 451, 127 N. Y., page 398, 28 N. E.) :

"The time in which the condition required notice to be given might not include more than 12 business hours to ascertain the requisite particulars of the claim for the purposes of the notice.   It is easy to see that the specified time of 36 hours would be inadequate to the necessity that might exist in a case like the one under consideration.   The conclusion was permitted that, in view of the character and extent of the property and the nature of the claim for damages which might and did arise, the time specified within which to give notice with particulars was quite unreasonable; and therefore and for that reason the condition in that respect was inapplicable to the shipments in question, and a failure to give such notice was no bar to the remedy."

If the court could ignore the terms of a written contract between parties, there would seem to be no reason why, under the facts alleged by the plaintiff, where the damage is suffered through the wrongful act of the defendant, there should be any difficulty in sustaining the right of the plaintiff to recover, notwithstanding the failure to give the required notice.   It could not have been the purpose of the legislature to deny to a party injured by the negligence of the village any remedy against it, nor to unnecessarily embarrass parties in the enforcement of their rights (Sheehy v. City of New York, 160 N. Y. 139, 143, 54 N. E. 749); for that would be to disregard the provisions of the constitution, and it may well be that this clause was inadvertently permitted to mar an otherwise unobjectionable regulation of the plaintiff's right of action.   At any rate, we are convinced that the plaintiff has had no adequate opportunity to protect his rights, that the statute under consideration operates to deprive him of his property without due process of law, and that it cannot be permitted to defeat his right to recover any damages which he may have sustained through the wrongful act of the defendant.   Considered as a statute of limitations, and its effect is that of such a law, the plaintiff has a right to a reasonable time and opportunity in which to enforce his rights (People v. Turner, 117 N. Y. 227, 233, 22 N. E. 1022, 15 Am. St. Rep. 498; Turner v. People, 168 U. S. 90, 94, 18 Sup. Ct. 38, 42 L. Ed. 392; Meigs v. Roberts, 162 N. Y. 371, 378, 56 N. E. 838, 76 Am. St. Rep. 322, and authorities there cited); and to refuse to sustain the interlocutory judgment would be to deprive him of the rights which belong to citizenship in the state of New York.   "The obligation of a municipal corporation," say the court in People v. Common Council of City of Buffalo, 140 N. Y. 300, 307, 35 N. E. 485, 487, 37 Am. St. Rep. 563, 566, "cannot be impaired by restraining its power of taxation to the point of disabling it from performance, or by a repeal of the law under which the obligation was to be enforced, or by enacting statutes of limitation that do not allow a reasonable time for bringing the action, any more than by open and avowed assaults upon the contract itself."   And we know of no reason why the same rule does not apply in the matter of a tort.

While it is, perhaps, unnecessary to go further in this discussion, it may not be out of place to call attention to the fact that the constitution of this state, as amended in 1894, provides (section 18, art.

1) that "the right of action now existing to recover damages for injuries resulting in death shall never be abrogated," and that the right of action then existing is to be found in section 1902 of the Code of Civil Procedure, which provides as follows:

"The executor or administrator of a decedent, who has left, him or her surviving, a husband, wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect, or default, by which the decedent's death was caused, against a natural person who, or a corporation which, would have been liable in an action in favor of the decedent, by reason thereof, if death had not ensued."

If the accident which befell the plaintiff had resulted in his death, and it had become necessary to appoint an administrator, it would have been a physical impossibility to go through the forms of law in time to give the notice required by the charter of the village of Port Jervis; and it would, of course, be unconstitutional under those circumstances. The same thing is practically true of infant plaintiffs, who could proceed only through guardians, and whose rights could not be made to depend upon a voluntary notice by some one who was a stranger to the right, if it may be said that such a notice would comply with the provision that notice of intention to bring such action must be given. A party who is denied the right to bring an action may hardly be said to be capable of giving a notice of intention to bring such action; and, where a party is rendered unconscious through the wrongful act of another, it is not within the scope of justice to say that his rights may be sacrificed by the mere lapse of a few hours of time during which the plaintiff is not in a condition to act.

In determining whether a statute is unconstitutional, the question is, not whether the result is harmful in the particular case, but whether the statute, according to its terms, will violate the provisions of the constitution in its application to cases which may be expected to arise (Dexter v. City of Boston, 176 Mass. 247, 251, 57 N. E. 379); and we have shown in the present case, not only that the plaintiff will be deprived of his constitutional rights, but that in those cases which may be expected to arise the statute, if sustained, will serve to defeat the guaranties of the constitution, and to deprive future plaintiffs of the remedy which the policy of the state is intended to afford them. So it is laid down in the case of City of Rochester v. West, 164 N. Y. 510, 514, 58 N. E. 673, 674, that:

"The validity of a statute is not to be determined by what has been done in any particular instance, but by what may be done under it. Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Gilman v. Tucker, 128 N. Y. 190, 200, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464. It is equally true that the validity of a statute or ordinance is not to be determined from its effect in a particular case, but upon its general purpose and its efficiency to effect that end."

Tried by this rule, there can be no question that the purpose of the provision in the charter of the village of Port Jervis is obnoxious to the constitution of this state; that it is hostile to the broad jurisprudence of the state, which undertakes to provide an adequate remedy for every legal wrong. It is unfair in spirit. It makes the rights of individuals depend upon chance, rather than

upon the uniform administration of the law, and is intended to defeat, rather than conserve, the legitimate ends of government. It is intended to work wrong, instead of right. It is arbitrary and without justification in public policy, and it should be denied the force of law.

The interlocutory judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., and JENKS and SEWELL, JJ., concur.

HIRSCHBERG, J. I concur in the result reached by Mr. Justice WOODWARD, that the interlocutory judgment should be affirmed. In Green v. Village of Port Jervis, 55 App. Div. 58, 66 N. Y. Supp. 1042, we decided that the provision of the defendant's charter in question was to be regarded as prescribing a rule of practice, and not as establishing an arbitrary limitation. Assuming, as we must, that the facts stated in the complaint are true, it would be unreasonable to apply to those facts the absurdly short period permitted for the filing of a notice of intention to commence the action. Indeed, it may be doubted whether the period is not so short as to render its enforcement impracticable in the due administration of justice, and to defeat in many instances the purpose of the legislature in giving the period of one year in which to begin an action. In other words, it would seem at least questionable whether a requirement that notice of intention to sue must be given before the existence of actionable injury develops in the ordinary course of nature does not lack the essential element of practicability as a rule of legal procedure. This is especially true where the notice is required, as it is under the defendant's charter, to state the injury inflicted, as well as the happening of the accident and the time and place of the occurrence.