JEANIE BARCLAY, administratrix, *vs.* CITY OF BOSTON.

Suffolk. January 14, 1897. — February 25, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Highway Defect — Notice.*

In an action for personal injuries occasioned to the plaintiff's intestate by an alleged defect in a highway in the defendant city, caused by an accumulation of ice and snow, a ruling that the plaintiff is not entitled to recover on account of the failure of his intestate to give notice within the ten days required by Pub. Sts. c. 52, § 19, as amended by St. 1894, c. 422, is wrong, if there is evidence from which the jury may infer that it was impossible for the intestate, by reason of physical or mental incapacity, to give the notice within the required time.

TORT, for personal injuries occasioned to the plaintiff's intestate on January 1, 1897, by an alleged defect in a highway in the defendant city, caused by an accumulation of ice and snow. The intestate died on January 14, the plaintiff was appointed

administratrix on February 26, and a sufficient legal notice of the time, place, and cause of the accident was served on the defendant on February 27.

Trial in the Superior Court, before *Mason*, C. J., who ruled that the plaintiff was not entitled to recover on account of the failure of her intestate to give notice within the ten days, as required by Pub. Sts. c. 52, §§ 19, 21, and St. 1894, c. 422, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*N. F. Hesseltine*, for the plaintiff.

*S. H. Hudson*, for the defendant.

KNOWLTON, J. The question in this case is whether there was any evidence that, by reason of physical or mental incapacity, it was impossible for the plaintiff's intestate to give notice of the time, place, and cause of the accident within ten days after it happened. St. 1894, c. 422. See Pub. Sts. c. 52, §§ 19, 21. It is well settled that, to come within the provision of the statute last referred to, it is not enough to show that the person injured was unable to give the notice in person, but it must be shown that there was such physical or mental incapacity as to make it impossible for him, by any ordinary means at his command, to procure the notice to be given. *May* v. *Boston*, 150 Mass. 517. *Lyons* v. *Cambridge*, 132 Mass. 534. *Saunders* v. *Boston*, *ante*, 595.

In the present case the plaintiff did not introduce the best evidence upon the question whether her intestate was so incapacitated during the whole period of the ten days, and from all the testimony the court and jury must have been left in doubt in regard to it. But the question is not whether the best evidence was introduced, nor whether there was proof beyond a reasonable doubt, but whether there was any evidence from which it might fairly be inferred that she was incapacitated.

It appears that the deceased was a strong, healthy woman, fifty-eight years of age, who lived in Somerville, and kept house for her son and daughter. She got dinner for her son on the first day of January, 1895, and he left her in the house, sewing, at about three o'clock in the afternoon. She then disappeared, and although her son, daughter, and brother made inquiries for her at different times among her friends in Somerville and Bos-

ton, and at the police offices in both of these cities, and adver-
tised in the Boston Globe in regard to her disappearance, none
of them learned of her whereabouts until January 11, when her
brother, who lived in East Boston, received a postal card from
the city hospital in Boston, dated January 11, stating that his
sister was at the hospital dangerously ill.  He immediately went
to see her, and at different times from that time until her death,
which occurred on January 15, she was visited by him, her son
and daughter, and also by two of her neighbors.  The evidence
tended to show that she was suffering great pain, and much of
the time was delirious, but on one or more occasions recognized
her brother and her daughter, and greeted them affectionately.

It appeared that at about five o'clock on January 1 she fell
on one of the public streets of Boston, and sustained a fracture
of her left hip, and hit her head.  She received medical treat-
ment in a drug store, a policeman came, an ambulance was
called, and she was carried to the city hospital.  While at the
drug store she was perfectly conscious, and gave her name.
There was no direct evidence in regard to her condition from
that time until January 12, but the testimony tended to show
that before the accident she was living on terms of affection
with her children and her brother, and that, if she had been able,
she would have communicated with them to relieve their prob-
able anxiety on account of her sudden disappearance.  From all
the circumstances of the case, we think the court and jury might
fairly have inferred that all the time while she was in the hos-
pital she was physically and mentally incapacitated from direct-
ing such business as causing notice of her accident to be sent to
the city.  Testimony from those who knew her condition might
contradict or confirm such an inference; but in the absence of
such testimony we are of opinion that the plaintiff, although
having the burden of proof, properly might ask the jury to be-
lieve that it was impossible for her mother to give the notice
while she was in the hospital.

*Exceptions sustained.*