## WILLIAMS v. VILLAGE OF PORT CHESTER.

(Supreme Court, Appellate Division, Second Department. May 29, 1902.)

MUNICIPAL CORPORATIONS—PERSONAL INJURIES—NOTICE OF CLAIM—CONSTITUTIONAL LAW—DUE PROCESS OF LAW.

Laws 1894, c. 623, which provides that no action for personal injuries against the village of Port Chester can be maintained unless the claim has been presented in writing within 30 days after the time such injuries were received, is unconstitutional, as to one who had sustained injuries through the negligence of the village, and, on account of such injuries, had been unable to present his claim within the prescribed

time, as the requirement deprived him of his right to a remedy without due process of law, as guarantied by Const. art. 1, §§ 1, 6.

Appeal from special term, Westchester county.

Action by Charles H. Williams against the village of Port Chester. From an interlocutory judgment overruling defendant's demurrer to the complaint, it appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Louis S. Phillips, for appellant.

Frederick W. Sherman, for respondent.

WOODWARD, J. The plaintiff seeks to recover damages resulting from a fall upon an icy sidewalk of the defendant. The defendant demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action, and the demurrer has been overruled. The defendant appeals to this court.

The immediate question involved and argued upon this appeal is whether the complaint alleges timely notice to the village in accordance with section 16, tit. 7, of the village charter (chapter 623, Laws 1894), which provides that no action of this character can be maintained "unless the same shall be commenced within one year after the cause of action shall have accrued, nor unless the claim or demand shall be presented in writing to the president or treasurer of said village within thirty days after the time such injuries were received or damages sustained. * * * The omission to present any such claim in the manner and within the time mentioned shall be a bar to any action against the village; and no action upon any such claim or demand shall be commenced until after three months from the presentation thereof." The accident occurred on the 4th day of January, 1898. The notice was served on the village on February 16th,—43 days after the accident,—and the action was commenced September 9, 1898. The complaint alleges: That by the fall the plaintiff's "skull was fractured, and his head was bruised and wounded, and whereby ever since that day injuries and damages have been caused and have accrued to the plaintiff, and he, the said plaintiff, has been prevented from, and is unable to pursue his occupation as a carpenter, or to earn any wages, and he was caused to suffer, and is suffering, and will suffer great pain, and his mind has been, and is, affected, and he has been, and will be, obliged to, and has laid out money for care for a physician and medicines, and for traveling, to be cured of his injuries; and the plaintiff was, by reason of said injuries, confined to his bed, and unable to transact any business, and was by the said acts of the defendant prevented from presenting to its president or treasurer within thirty days after the said 4th day of January a notice in writing with respect to said occurrence. That on the 16th day of February, 1898, and within 30 days after the time much of the damages were sustained by the plaintiff, and within thirty days from the time when the said acts of the defendant permitted him to do so, and before some of the plaintiff's said injuries were received, or some of his damages sustained, the plaintiff presented, or caused to be presented, his said

claim and demand in writing to the treasurer of the defendant, * * * and the same was so presented more than three months before the commencement of this action."

"A frequent recurrence to the fundamental principles of the constitution and the constant adherence to those of piety, justice, moderation, temperance, industry and frugality are absolutely necessary to preserve the advantages of liberty and to maintain their government," says section 18 of part 1 of the constitution of Massachusetts, which has reduced to language more of the spirit of our constitutional system of government than any other of the states of the Union. "Every subject of the commonwealth," says section 11, "ought to find a certain remedy by having recourse to laws for all injuries or wrongs which he may receive in his person, property or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, without delay; conformably to the laws." Chapter 39 of Magna Charta provides, "No free man shall be taken or imprisoned, deseized or exiled or in any way harmed—nor will we go upon or send upon him—save by the lawful judgment of his peers or by the laws of the land." Chapter 40 provides, "To none will we sell; to none deny or delay right or justice." In the reign of William and Mary (1691) the legislative authority of the then colony of New York enacted an act entitled "An act declaring what are the rights and privileges of their majesties subjects inhabiting within their province of New York." Among the provisions of this act was one that "no freeman shall be taken or imprisoned or be deseized of his free-hold or liberty, or free customs, or outlawed or exiled or any other way destroyed; nor shall he be passed upon, adjudged or condemned but by the lawful judgment of his peers and by the law of this province. Justice nor rights shall neither be sold, denied or outlawed to any person within this province." 1 Col. Laws N. Y. 346.

These broad general principles have reduced themselves in the process of time to the maxim of the common law "that there is no legal wrong without a remedy." The principle has, perhaps, never been better stated than in the language of Chief Justice Marshall in the case of Marbury v. Madison, 1 Cranch, *163, 2 L. Ed. 60, where he says:

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives injuries. One of the first duties of government is to afford this protection. In Great Britain the king himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court. In the third volume of his Commentaries (page 23) Blackstone states two cases in which a remedy is afforded by mere operation of law. 'In all other cases,' he says, 'it is a general and indisputable rule that, where there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded.' And afterwards (page 109 of the same volume) he says: 'I am next to consider such injuries as are cognizable by the courts of the common law. And herein I shall, for the present, only remark that all possible injuries whatsoever that do not fall within the exclusive cognizance of either the ecclesiastical, military, or maritime tribunals are for that very reason within the cognizance of the common-law courts of justice; for it is a settled and invariable principle in the laws of England that every right, when withheld, must have a remedy, and every injury its proper redress.' The government of the United States has been emphatically termed a govern-

ment of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right."

"The body politic," says the preamble of the constitution of Massachusetts, "is formed by a voluntary association of individuals; it is a social compact, by which the whole people covenants with each citizen and each citizen with the whole people, that all shall be governed by certain laws for the common good. It is the duty of the people, therefore, in framing a constitution of government to provide for an impartial interpretation and a faithful execution of them, that every man at all times may find his security in them."

The first constitution of this state, adopted in 1777, re-enacted the Declaration of Independence, which declares:

"We hold these truths to be self-evident, that all men are created equal and are endowed by their Creator with unalienable rights, that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

And these words are synonymous with those provisions of the fundamental law which provide that no member of this state shall be deprived of life, liberty, or property without due process of law. Bartemeyer v. Iowa, 18 Wall. 129–136, 21 L. Ed. 929.

In addition to these provisions of section 1 of article 1 of the constitution that "no member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers," and that provision of section 6 of the same article which has already been quoted, the constitution provides as follows:

"Such parts of the common law and of the acts of the legislature of the colony of New York, as together did form the law of the said colony, on the nineteenth day of April, 1775, and the resolutions of the congress of the said colony and of the convention of the state of New York, in force on the twentieth day of April, 1777, which have not since expired or been repealed or altered; and such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same."

In view of the great purposes of government, and the understanding of the framers of our constitutional system, there can be no doubt that the intent of the constitutional provisions above cited was to guaranty to every member of this state free access to the courts, and a full opportunity to have a judicial determination of all controversies which might involve his rights, whether such rights were the outgrowth of contracts or of violated duty. The purpose sought to be accomplished was to afford protection to all rights of mankind, and it is not material that we should be able to say precisely what right is violated,—whether of life, liberty, or property; but any encroachment upon the fundamental rights of the individual was to find a certain remedy in the law. "Until a right exists, there can be no remedy. But when a right is given, whether by the common law or statute, there must be a remedy when it is withheld." Dougan v. Transportation Co., 56 N. Y. 1–5. In the case of Reid v. City of New York, 139 N. Y. 534, 34 N. E. 1102, an effort was made to defeat the right of the plaintiff to recover

for the negligence of the municipalities of New York and Brooklyn in the operation of the Brooklyn Bridge by an amendment to the statute transferring a liability to the trustees provided by the act.    In speaking of the plaintiff's rights, the court say:

"The plaintiff had a remedy against these defendants, of which she could not be deprived.    The undertaking was to carry the plaintiff safely, and for the results of the negligent performance of that undertaking the plaintiff had a remedy against the defendants, which she could and did enforce by the commencement of this action.    We may say that the right of action was the plaintiff's property.    To hold that her remedy was taken away, and thus her pending action was defeated, by this legislation, would be giving a latitude to interference beyond any justification in authority."

See Barry v. Village of Port Jervis, 64 App. Div. 268–283, 72 N. Y. Supp. 104, and authorities there cited.

Under the facts set forth in the plaintiff's complaint, and which, for the purposes of a demurrer, must be accepted as true, the plaintiff undoubtedly had a complete cause of action at the time of sustaining the injuries set forth in the pleadings; and this right of action is property, under the authorities above cited.    The plaintiff's case is thus brought within the letter and the spirit of section 1 of article 1 of the constitution of this state, and must, if the high purposes of government are to be fulfilled, have a remedy for the wrong which has been done him through the negligence of the defendant.    If we are right in this proposition (and it is abundantly supported by authority); if the plaintiff, under the constitution and the common law, has sustained a wrong, and must have a remedy,—it follows logically that he must have a reasonable opportunity to assert his rights.    This is necessary to that due process of law which the constitution provides.    To say, as has been suggested, that the "law of the land," or "due process of law," may mean the very act of legislation which deprives the citizen of his rights, privileges, and property, leads to a mere absurdity.    The constitution would then mean that no person should be deprived of his property or rights unless the legislature shall pass a law to effectuate the wrong, and this would be throwing the restraint entirely away.    A true interpretation of these constitutional phrases is that, where rights have accrued to the citizen under the existing law, there is no power in any branch of the government to take them away; but where they are held contrary to existing law, or are forfeited by its violation, these may be taken from him,—never by an act of the legislature, but in the due administration of the law,—before the judicial tribunals of the state.    The cause or occasion of depriving the citizen of his supposed rights must be found in the law as it is, or at least it cannot be created by a legislative act which aims at their destruction.    Where rights of property are deemed to exist, the legislature cannot say they shall exist no longer, nor will it make any difference although a process and a tribunal are appointed to secure sentence.    If this is the law of the land, and due process of law, within the meaning of the constitution, then the legislature is omnipotent.    It may under the same interpretation pass a law to take away liberty or life, without a pre-existing cause, and appoint judicial and executive agencies to execute this law. Property is placed by the constitution in the same category with liberty and life.    Wynehamer v. People, 13 N. Y. 378, 393.

Speaking of that clause of the constitution which guaranties that "no person shall be deprived of life, liberty or property, without due process of law," the court, in Taylor v. Porter, 4 Hill, 140, 40 Am. Dec. 274, say:

"The words 'due process of law,' in this place, cannot mean less than a prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property. It will be seen that the same measure of protection against legislative encroachment is extended to life, liberty, and property; and, if the latter can be taken without a forensic trial and judgment, there is no security for the others."

So in the case of Wynehamer v. People, supra, it was said:

"To give the clause, therefore, any value, it must be understood to mean that no person shall be deprived, by any form of legislation or governmental action, of either life, liberty, or property, except as the consequence of some judicial proceeding, appropriately and legally conducted. It lows that a law which by its own inherent force extinguishes rights of property, or compels their extinction, without any legal process whatever, comes directly in conflict with the constitution."

The plaintiff in the present instance, accepting the allegations of his complaint to be true, has suffered a wrong at the hands of the defendant; he has sustained injuries which have unfitted him for the performance of labor, and has been obliged to remain in idleness and to suffer great pain, the duration of which is uncertain; yet it is urged that, because he was unable to give the notice prescribed by the charter of Port Chester within a period of 30 days from the date of the accident, he is to be denied the right of a judicial determination of the amount of his damages, and a remedy for the wrong he has suffered through the negligence of the defendant. This is clearly depriving the plaintiff of his property right in his cause of action. It is denying to him the rights and privileges for which he, in common with other members of the body politic, entered into a state of society, and which were intended to be preserved to him by the provisions of section 1 of article 1 of the constitution, already quoted. It is a denial of the maxim of the common law, under which the right of action for negligence vests, that "there is no wrong without a remedy"; and while it is true, as suggested in Bank v. Wetmore, 124 N. Y. 241, 251, 26 N. E. 548, that this maxim is not absolutely true, it yet expresses a principle; and it is for that, rather than precedent, that courts will seek, in considering whether any, or what, remedy may be had in the administration of justice. Bank v. Wetmore, supra. See, also, Harvey v. McDonnell, 113 N. Y. 526, 531, 21 N. E. 695. Not only does the provision of the charter of Port Chester attempt to deprive the plaintiff of his right of property, but it has invaded his liberty, in a constitutional sense, and it now seeks to avoid the responsibility for this encroachment upon his rights. "In a broad sense," say the court in People v. Havnor, 149 N. Y. 195, 199, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707, "whatever prevents a man from following a useful calling is an invasion of his liberty, and whatever prevents him from freely using his lands or chattels is a deprivation of his property;" and it is alleged in the complaint now before us that the plaintiff has been injured so that he is unable to

perform any services at his trade,—that of a carpenter,—through the negligence of the defendant.  Certainly negligence on the part of the defendant is not due process of law; nor is an act of the legislature which permits the defendant to hide behind its own wrongful conduct, and to deny to the plaintiff redress for his injuries.  It is a sound principle that he who prevents a thing from being done shall not avail himself of the nonperformance he has occasioned (Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 431, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689, and authorities there cited), and the rule is as applicable to municipal corporations as to individuals.  The rule is laid down in Cooley's Constitutional Limitations (page 444), as an elementary principle, that a party cannot "by his misconduct so forfeit a right that it may be taken from him without judicial proceedings in which a forfeiture shall be declared in due form.  Forfeiture of rights and properties cannot be adjudged by legislative acts, and confiscation, without a judicial hearing after due notice, would be void, as not being due process of law," yet this is exactly what these modern innovations in municipal charters undertake to do; and "it is not without a feeling of satisfaction," to quote the language of Chief Judge Ruger in the case of Gilman v. Tucker, 128 N. Y. 190, 205, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464, "that we have found this amendatory statute unconstitutional, for, in every view in which it may be considered, it impresses us with the conviction that it is grossly inequitable and unjust."  The same learned jurist, writing in the same case, says:  "We do not think it is competent for the legislature to deny, for any cause, to a party who has been illegally deprived of his property, access to the constitutional courts of the state for relief;" and we cannot believe that any court charged with the administration of the law in a jurisdiction which boasts that there can be no legal wrong without a remedy will ever sanction the doctrine that the legislature may create a corporation, charging it with the discharge of certain public functions as the condition of its incorporation, and then relieve it of all responsibility for its failure to discharge that duty, by denying to persons wronged by its negligence admission to the courts for a redress of their grievances.  This is the practical effect of the statute now under consideration, in so far as this plaintiff is concerned; for if we believe, as we must, for the purposes of deciding the question raised by the demurrer, that the plaintiff's skull was cracked, that his mind was injured, etc., it is evident that he was in no condition to give the notice required by the provisions of the charter.  He is thus, through no fault of his own, deprived of a right or privilege which no degree of misconduct could constitutionally destroy (Cooley, Const. Lim. 444), and the rule is well established that "the constitutional validity of a law is to be tested, not by what has been done under it, but by what may by its authority be done" (Gilman v. Tucker, 128 N. Y. 190, 200, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464, and authority there cited; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609; Coxe v. State, 144 N. Y. 396, 39 N. E. 400).  "It is the duty of every state," say the court in Railway Co. v. Humes, 115 U. S. 512, 521, 6 Sup. Ct. 110, 29 L. Ed. 463, "to provide, in the adminis-

tration of justice, for the redress of private wrongs"; and this duty cannot be discharged by legislation which seeks to place the individual at the mercy of negligent municipal officials, by denying him admission to the courts when he is wronged through such negligence.

It is urged, however, that the provision of the charter of Port Chester is different from that of Port Jervis; that in the latter city the 48-hour provision was a condition precedent, while in the case at bar the charter provides a limitation which operates as a bar to the action. In the view we take of this question, the exact language of the statute is not material. The question is whether it operates to deprive the plaintiff of a reasonable opportunity to vindicate his rights; whether it operates to substantially deny him a remedy for the wrong he has suffered through a neglect of that duty which the defendant owed to him,—to keep the streets and highways of Port Chester in a reasonably safe condition for the use of the public. If it has this effect, then it operates to deny to him his rights embraced within the language used in the constitution, and which declares that no person shall "be deprived of life, liberty or property without due process of law." It violates the great original compact, "by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good," and "that every man may, at all times, find his security in them" (preamble to the constitution of Massachusetts), and it is therefore void. It is a violation of the obligation of the contract subsisting between the state and the citizens of that state that they shall have a remedy for every legal wrong; that "every subject, for injury done to him in bonis, in terris, vol persona, by any other subject, be he ecclesiastical or temporal, without any exception, may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay." 1 Black. Mag. Ch. 141. The obligation of this contract is equally sacred with all other contracts; and "those rules of construction," says Mr. Chief Justice Marshall in Sturgis v. Crowninshield, 4 Wheat. 206, 4 L. Ed. 529, "which have been consecrated by the wisdom of ages, compel us to say that these words [section 10, art. 1, Const. U. S.] prohibit the passage of any law discharging a contract without performance." "Statutes of limitations," says this same great authority, "relate to the remedies which are furnished in the courts. They rather establish that certain circumstances shall amount to evidence that a contract has been performed, than dispense with its performance." And the rule is universally recognized that "in all such cases the question is one of reasonableness." Terry v. Anderson, 95 U. S. 628, 24 L. Ed. 365. Statutes of limitations are, indeed, statutes of repose. They are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away (U. S. v. Wiley, 11 Wall. 508, 513, 20 L. Ed. 211); and in the case now before us we are only to consider whether the time allowed in this

statute is, under all the circumstances, reasonable (Gilfillan v. Canal Co., 109 U. S. 401, 404, 3 Sup. Ct. 304, 27 L. Ed. 977, citing Terry v. Anderson, supra). Of that the legislature, it may be admitted, is the primary judge, but it is, nevertheless, open to the review of the courts; and, where a palpable error has been committed, it is for the judiciary to interpose to protect the rights of the individual. Terry v. Anderson, 95 U. S. 633, 24 L. Ed. 365; People v. Sickles, 156 N. Y. 541, 548, 51 N. E. 288. In the Terry Case, where the statute had reduced the limitation on a cause of action which had already been running nearly 4 years to 9 months and 17 days, it was held reasonable; and the court lays down the rule that, in judging of the question of reasonableness, "we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts." If we accept this rule, and place ourselves in the position of the legislators who enacted this provision of the charter of Port Chester in 1894 (chapter 623, Laws 1894), what shall we find? Was there any great public calamity, like the Civil War, which had disturbed the state of society, as was the case in Terry v. Anderson, supra; or was there any great and controlling reason why the municipal corporation of Port Chester, and other villages and cities whose charters were amended about this time, should be permitted to wantonly expose the citizens of this state to personal injuries without redress? We find no such reason suggested. On the contrary, the legislature had, by chapter 572 of the Laws of 1886, enacted that, in cities of over 50,000 inhabitants, actions for negligence resulting in personal injuries should not be maintained "unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless notice of the intention to commence such action and of the time and place at which the injuries were received shall have been filed with the counsel to the corporation or other proper law officer thereof within six months after such cause of action shall have accrued." Here was a deliberate act of the legislature, making a condition precedent to the maintenance of this character of actions, and requiring notice within a period, not of 48 hours or of 30 days, but of 6 months; and this act received the sanction of the court of appeals in Curry v. City of Buffalo, 135 N. Y. 366, 32 N. E. 80, which we shall more fully consider in another part of this discussion. This was followed by chapter 568 of the Laws of 1890, in which it was provided that every town in this state should be liable for all damages to persons or property, sustained by any defect in its highways or bridges, due to the negligence of the highway commissioner, but it was provided:

"No action shall be maintained against any town to recover such damages, unless a verified statement of the cause of action shall have been presented to the supervisor of the town, within six months after the cause of action accrued; and no such action shall be commenced until fifteen days after the service of such statement." Section 16 of the highway law.

The defendant's charter, as we have seen, was amended in 1894, and in 1897 the village law underwent amendment (chapter 414, Laws 1897); and section 322 of this act provides that no action for negli-

gence shall be maintained "unless a written verified statement of the
nature of the claim and of the time and place at which such injury is
alleged to have been received shall have been filed with the village
clerk within six months after the cause of action shall have accrued."

It will thus be seen that, whenever the legislature has enacted a
general law (and it has done this for all municipal corporations,
except the few between villages and cities of less than 50,000), it has
uniformly adopted six months as the period within which a notice of
the accident should be filed; and the only reason which can be given
for the shorter period fixed in the defendant's charter, which is con-
sistent with our knowledge of the method of enacting these statutes,
is that the charter is the work, in its details, not of the legislature,
but of the people of the municipality, or their agents or servants, and,
as a matter of fact, is, in effect, merely adopted by the legislature at
the request of the local representatives from the section affected, as
a "local measure." As the act conveyed to the municipality fran-
chises and special privileges, its language must be construed most
favorably to the people, and all reasonable doubts in construction
must be solved against the defendant (People v. Broadway R. Co.,
126 N. Y. 29, 36, 26 N. E. 961); and we are justified in reaching the
conclusion that the attention of the legislative body was never called
to this detail of the charter, and that the legislative sanction goes no
further than to the formalities of a revision of the defendant's char-
ter, in harmony with the general practice, which permits a comity in
legislative matters of this character; no questions being asked,
except as to the desires of the member or members whose district is
interested in the legislation. No reason is suggested, and none sug-
gests itself, why the village of Port Chester should have a different
rule upon this point than that contained in the general village law;
and, where the effect of the special act is to deprive the plaintiff of
all remedy, there should be no hesitation in accepting the general
rule laid down by the legislature as its judgment upon the reasonable-
ness of these statutes regulating the remedy, and to hold the special
provisions void.

In Massachusetts they have a general statute (chapter 234, Laws
1877, with subsequent amendments) which requires that the person
injured shall, "within thirty days thereafter give notice to the city or
town by law obliged to keep said highway in repair, of the time,
place and cause of the injury, unless from physical or mental incapac-
ity it is impossible for the person injured to give such notice, in which
case he may give notice within ten days after such incapacity is
removed." Gay v. City of Cambridge, 128 Mass. 387; May v. City
of Boston, 150 Mass. 517, 23 N. E. 220; Lyons v. City of Cambridge,
132 Mass. 534; Barclay v. City of Boston, 167 Mass. 596, 46 N. E.
391. At the time of the decision in the Barclay Case, supra, the stat-
ute had been amended so that only 10 days were allowed, but the
provision was still retained which allowed the plaintiff to show by
evidence that he was physically or mentally unable to give the notice,
thus preserving his remedy; but in no instance that we have been
able to discover has any court of record sanctioned the doctrine that
a person may be injured through the negligence of a municipal cor-

poration, and be denied all remedy if the accident is serious enough to prevent the injured party from acting within a given period.

The supporters of this effort at municipal evasion of the duties imposed as a condition of the granting of the charter find great consolation and encouragement in the language of Earl, J., in the case of Curry v. City of Buffalo, 135 N. Y. 366, 32 N. E. 80, where, after deciding that the provisions of the general law requiring a notice within six months was within the limits of the legislative power, he says:

"The whole matter of the maintenance of this class of actions was within the control of the legislature. It could refuse a right of action against municipalities for such injuries, and it could impose any conditions precedent to the maintenance of such actions."

That this was mere dictum, suggested by the previous discussion, but in no wise bearing upon the decision which had already been made, is evident. All that was necessary to be decided in that case was that the statute requiring a notice within six months was constitutional, and with this decision we have no quarrel; for it is clearly within the province of the legislature to regulate the remedy, and to make reasonable conditions precedent. But it will be observed that the learned jurist does not assert the doctrine that the person injured may be deprived of all remedy. He merely says the legislature "could refuse a right of action against municipalities for such injuries," which would, of necessity, impose the liability upon the officers or agents who were given control, or were charged with the duty of keeping the highways in condition, as was formerly the case with highway commissioners in towns. Long before Earl, J., wrote in the Curry Case, supra, Finch, J., had said, in the case of Bennett v. Whitney, 94 N. Y. 302, that "it is settled law in this court that one who assumes the duties and is invested with the powers of a public officer is liable to an individual who sustains special damage by a neglect properly to perform such duties," and it was with this in mind that the learned jurist used the language above quoted. That we are not mistaken in this view is clearly apparent when we come to consider the case of Fitzpatrick v. Slocum, 89 N. Y. 359, where the court had under consideration a provision of the charter of the city of Brooklyn which provided (section 27, tit. 19, c. 863, Laws 1873) that:

"The city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the provisions of this act, but the remedy for the party or parties aggrieved by any such misfeasance or nonfeasance shall be by mandamus or other proceeding or action to compel the performance of the duty, or by other action against the members of the common council, officers, or appointees, as the rights of such party or parties may by law admit, if at all."

Here was an apparent effort on the part of the legislature to relieve the municipality, as such, from all liability for negligence. An action had been brought against the commissioners who had charge of the construction of a bridge over a canal, in the negligent operation of which the plaintiff was injured. It was held that the commissioners

were not liable; and the plaintiff urged, on appeal, that, if the commissioners were not liable, then she was without remedy, because of the provisions of the charter above quoted. Commenting upon this situation, the court, speaking through the same learned jurist who wrote in the Curry Case, supra, say:

"Under this section it is said that no liability in a case like this can be enforced against the city, and that the only remedy for the party injured is against some one or more of the city officers. We are of the opinion that the exemption created by this section is not so broad as claimed. There must be a remedy in such a case, where one is injured, without fault of his own, by a defect in one of the streets or bridges of the city, either against the city, or some one of its officers. The primary duty to keep its streets and bridges in safe condition rests upon the city, and there is a general obligation upon it to use proper care and vigilance in putting and keeping its streets and bridges in such condition; and unless that duty has been plainly devolved upon some officer of the city, against whom a remedy for nonfeasance can be had, the remedy is against the city upon its obligation."

See Hardy v. City of Brooklyn, 90 N. Y. 435, 43 Am. Rep. 182; Bieling v. City of Brooklyn, 120 N. Y. 98, 105, 24 N. E. 389.

When we read the language of the Curry Case, supra, in the light of the above quotation, we shall see that it gives no ground for the construction which has been put upon it by those who have believed that the legislature was authorized to thus invade the rights of the citizen. All that was intended to be said was that it was within the power of the legislature to deny a right of action against the municipality, by plainly devolving the duty upon some officer or agent of the city against whom a remedy for nonfeasance could be asserted, and that the legislature might impose any reasonable condition precedent to the maintenance of such an action against the municipality; but it was never intended to be held that the legislature could impose a duty upon the municipality, and then permit the municipality to disregard that duty, to the injury of individuals, without accepting the responsibility for such misconduct.

The Curry Case was decided in 1892. In 1895 the legislature of the state of Oregon, perhaps having in mind the language of the court in the Curry Case, amended the charter of the city of Astoria, and provided (chapter 572, Laws 1895) that "neither the city of Astoria nor any member of the council thereof shall in any manner be held liable for any damages resulting from a defective condition of any street, alley or highway thereof." Susan Mattson was injured by a defect in the highway, and brought an action to recover damages. The provision of the charter above quoted was pleaded in bar of the plaintiff's action, but the learned trial court refused to dismiss the action; holding that the provision of the charter was void, under the constitution of that state, which provides that "every man shall have a remedy by due course of law for injury done him in person, property or reputation," which is merely a reassertion of the common-law maxim ingrafted into our constitution in the bill of rights. This case went to the supreme court of Oregon,—the court of final resort in that state; and Chief Justice Bean, delivering the unanimous opinion of the court, said:

"That it is within the power of the legislature to exempt a city from liability to persons receiving injuries on account of streets being defective

or out of repair is unquestioned.   O'Harra v. City of Portland, 3 Or. 525.
But in such a case the injured party is not wholly without a remedy.   He
may proceed personally against the officers to whom the charter delegates
the duty of keeping the streets in repair, and from whose negligence the
injury resulted.   'It is settled law in this court,' says Mr. Justice Finch,
'that one who assumes the duties and is invested with the powers of a public
officer is liable to an individual who sustains special damage by a neglect
properly to perform such duties.'   Bennett v. Whitney, 94 N. Y. 302.   Mr.
Justice Swayne said:   'The rule is well settled that where the law requires
absolutely a ministerial act to be done by a public officer, and he neglects
or refuses to do such act, he may be compelled to respond in damages to the
extent of the injury arising from his conduct.'   Citing many authorities.   A
provision, therefore, of the city charter, exempting the city from liability
for damages resulting from defective streets, is not violative of the consti-
tutional provision referred to, because it does not wholly deny the injured
party a remedy for the wrong suffered.   The charter provision in question,
however, goes further.   It provides that neither the city nor any member
of the common council shall be liable, and, if valid, prevents a common-law
action against the members of the council for their negligent acts or
omissions, and is practically, therefore, a denial of any remedy, as they
are the only officers charged with the duty of keeping the streets in repair.
The constitutional provision guarantying to every person a remedy by due
course of law for injuries done him in person or property is found in the
constitutions of many of the states, and means, as said by the supreme
court of Missouri, 'that for such wrongs as are recognized by the law of
the land the courts will be open and afford a remedy' (Landis v. Campbell,
79 Mo. 433, 439, 49 Am. Rep. 239), or, as interpreted by the supreme court
of Wisconsin, 'that laws shall be enacted giving a certain remedy for all
injuries or wrongs' (Flanders v. Town of Merriman, 48 Wis. 567, 575, 4 N. W.
741).   It was intended to preserve the common-law right of action for in-
jury to person or property, and while the legislature may change the remedy
or the form of procedure, attach conditions precedent to its exercise, and
perhaps abolish old and substitute new remedies (McLain v. Williams, 10
S. D. 332, 73 N. W. 72, 43 L. R. A. 287; Reining v. City of Buffalo. 102 N. Y.
308, 6 N. E. 792; Terry v. Anderson, 95 U. S. 628, 633, 24 L. Ed. 365), it
cannot deny a remedy entirely.   It is immaterial, therefore, whether a
municipal corporation is technically liable at common law for negligence
in keeping its streets in repair, because, as was said by Judge Earl in Fitz-
patrick v. Slocum, 89 N. Y. 359, 'there must be a remedy in such a case,
where one is injured, without any fault of his own, by a defect in one of
the streets or bridges of the city, either against the city, or some one of its
officers.'   And the charter of Astoria attempts to deny both.   Whether a
municipal corporation was liable to a common-law action or not, its officers
were so liable to an individual specially damaged by their negligent act or
omission; and the charter provision under consideration attempted to take
away the remedy against the officers, as well as against the city, and is
therefore void."   Mattson v. City of Astoria (Or.) 65 Pac. 1066.

We have already pointed out that the common law and the acts of
the colonial legislature were made the law of this state by the provi-
sions of the state constitution, subject to change by the legislature, and
that these, in harmony with the covenants of the state with its inhabit-
ants, required that every member of this state should have a remedy
for all legal wrongs.   There has been no change in the common law
by act of the legislature in so far as the law of negligence not result-
ing in death is concerned.   It is not pretended that the amendment
to the charter of Port Chester has in any manner modified the common
law of the state, or that it was intended to modify it; and the rule is
familiar that a statute will not be construed as changing the common
law unless the intention appears from express words or by implication.
Wood v. Tunnicliff, 74 N. Y. 38, 43.   Where rights are infringed,

where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness, to induce a court of justice to suppose a design to effect such objects (U. S. v. Fisher, 2 Cranch, 390, 2 L. Ed. 304); and it may be assumed, therefore, that the common law is still in full force and vigor in the state of New York, requiring a remedy for all legal wrongs to the same extent as is required in the state of Oregon. There is no intimation that there are any officials of the village of Port Chester who are liable to the plaintiff. The defendant stands here upon the assumption that the village of Port Chester was liable for the injuries done to this plaintiff for a period of 30 days, and that after that time, no matter how great the wrong he has suffered, no matter how impossible it was for him to comply with the provision of the charter in reference to a notice, he is forever barred from recovering his damages. This, we are persuaded, is not the law of this state. The obligation of a municipal corporation cannot be impaired by restraining its power of taxation to the point of disabling it from performance, or by a repeal of the law under which the obligation was to be enforced, or by enacting statutes of limitation that do not allow a reasonable time for bringing the action, any more than by open and avowed assaults upon the contract itself (People v. Common Council of City of Buffalo, 140 N. Y. 300, 307, 35 N. E. 485, 37 Am. St. Rep. 563); and no reason suggests itself why the same limitations do not apply in the matter of a tort, by which the plaintiff is deprived of his liberty to labor, and his property in his capacity for daily toil, through no fault of his own, and by reason of the negligence of the defendant. "It is not necessary at this day," say the court in People v. King, 110 N. Y. 418, 423, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389, "to enter into any argument to prove that the clause in the bill of rights that no person shall be deprived of life, liberty, or property without due process of law (Const. art. 1, § 6), is to have a large and liberal interpretation, and that the fundamental principle of free government expressed in these words protects not only life, liberty, and property, in a strict and technical sense, against the unlawful invasion by the government in the exertion of governmental power in all its departments, but also protects every essential incident in the enjoyment of those rights"; and we know of nothing more essential to the rights of the plaintiff in the case now before us than an opportunity to have his damages assessed for the wrong which has been worked against his fundamental rights. In Gilbert v. Ackerman, 159 N. Y. 118, 124, 53 N. E. 753, 45 L. R. A. 118, it was said that:

"The right possessed by a person of enforcing his claim against another is property, and if a statute of limitations, acting upon that right, deprives the claimant of a reasonable time within which suit may be brought, it violates the constitutional provision that no person shall be deprived of property without due process of law."

It is conceded that the Port Chester statute is a statute of limitations in its effect, and the question to be decided is whether 30 days is a reasonable time for a person injured and incapacitated by the wrongful act of the defendant to assert his rights. We have previ-

ously had occasion to consider the authorities on the question of a reasonable time in Barry v. Village of Port Jervis, 64 App. Div. 268, 283, 72 N. Y. Supp. 104, et seq.; and we have no doubt that under the facts set forth in the pleadings, in connection with the repeated declarations of the legislature in general laws fixing the period for notices of this character at six months, the limitation upon the plaintiff's absolute and unalienable right to a remedy fixed by the charter of Port Chester is unreasonable and void. "All limitation laws, however," says Judge Cooley (Cooley, Const. Lim. [6th Ed.] p. 449), "must proceed on the theory that the party, by a lapse of time and omission on his part, has forfeited his right to assert his title in the law," and that these laws must also "proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing right of claimants without affording this opportunity. If it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." The plaintiff in this action has had no opportunity to try his rights in the courts; he has been rendered unfit and unable to transact his business, or to give the notice required; and now it is urged that he is without a remedy; that as to him all of the great purposes for which society is organized is at an end; and that he must bear the burden of the injuries inflicted upon him through no fault of his own, but through the neglect of duty on the part of the defendant. "The purposes for which men enter into society will determine the nature and terms of the social compact," say the court in Calder v. Bull, 3 Dall. 388, 1 L. Ed. 648; "and, as they are the foundation of the legislative power, they will decide what are the proper objects of it. The nature and ends of legislative power will limit the exercise of it. This fundamental principle flows from the very nature of our free republican governments,—that no man shall be compelled to do what the laws do not require, nor to refrain from acts which the laws permit. There are acts which the federal or state legislature cannot do without exceeding their authority. There are certain vital principles in our free republican governments which will determine and overrule an apparent and flagrant abuse of legislative power,—as to authorize manifest injustice by positive law, or to take away that security of personal liberty or private property for the protection whereof the government was established. An act of the legislature (for I cannot call it a law) contrary to the great principles of the social compact cannot be considered a rightful exercise of legislative authority." See Jones v. Robbins, 8 Gray, 329, 340; Com. v. Anthes, 5 Gray, 185, 222. "To secure these rights," says the Declaration of Independence, "governments are instituted among men, deriving their just powers from the consent of the governed." We have never consented that the right to "life, liberty and the pursuit of happiness"; "the right to life, liberty and property,"—should be taken from us by a mere act of the legislature. We have consented that this might be done by due process of law, which has been well defined to be "law in its regular course of administration through courts of justice." 2 Kent, Comm. 13. It means that every citizen shall have his day in court, and that he shall have the benefit of those rules of the com-

mon law generally deemed to be fundamental in their nature, because sanctioned by reason, by which judicial trials are governed. These rules, which secure to the accused a judicial trial, it is beyond the power of the legislature to subvert. Wynehamer v. People, 13 N. Y. 378, 447. It is beyond its power to deprive a person of his liberty, or to deprive him of his property, by mere legislation. It is not beyond the legislative power to regulate what shall be the due process of the law, by which the citizen may be put upon his trial concerning his liberty or his property, provided that the statute destroys none of those safeguards to individual freedom and rights which the people of England finally acquired for themselves, and which, as part of the common law of that land, we took over and adopted in the formation of a state government. They are preserved to all persons by the constitution of the state, and it is the duty of the judicial branch of the government to uphold them whenever brought into question. People v. Sickles, 156 N. Y. 541, 548, 51 N. E. 288. In the case at bar there is under consideration not a regulation of that due process of law which is required by the constitution, but a statute which undertakes to deny to a citizen of this state all remedy for the wrong he has suffered; to deny to him an opportunity to have his day in court, not because of any conduct on his part which would warrant the presumption that he had abandoned or forfeited his rights, but because, being incapable of action through the wrongful conduct of the defendant, he has not served a notice of his intention to bring this action within 30 days of the time when the wrong was consummated,—a time which no court of competent jurisdiction has ever yet held was sufficient to bar a civil action where the plaintiff was suffering under no possible disability. Society is organized to a poor purpose, so far as this plaintiff is concerned, and he ought to be absolved from its duties, if he may not, under the circumstances which he has pleaded, have access to the courts for the damages he has suffered. "Society in every state is a blessing," says a great author, "but government, even in its best state, is but a necessary evil; in its worst state, an intolerable one; for, when we suffer or are exposed to the same miseries by a government which we might expect in a country without a government, our calamity is heightened by reflecting that we furnish the means by which we suffer;" and this thought is peculiarly applicable to the condition of this plaintiff, if he must go on contributing his portion to the support of a government which in his necessity denies to him the remedy of a trial according to the course of the common law, in the same manner that other valid causes of actions are tried.

For the reasons here detailed, as well as for those which have been previously set forth in Green v. Village of Port Jervis, 55 App. Div. 58, 66 N. Y. Supp. 1042, and Barry v. Village of Port Jervis, 64 App. Div. 268, 72 N. Y. Supp. 104, and the authorities there cited, we reach the conclusion that the charter of the village of Port Chester, in so far as it relates to the present case, is unconstitutional and void; that it denies to the plaintiff the rights guarantied to him by the constitution; and that it does not constitute that due process of law demanded by both the state and federal constitutions.

The interlocutory judgment appealed from should be affirmed, with costs. All concur.